MARSHALL MARTINEZ, Petitioner-Appellant, v. ALAN KUNIMOTO,
DR., Respondent-Appellee, KIM M. THORBURG, et al.,
Respondent-Appellee.

No. 92-15072

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

1993 U.S. App. LEXIS 11693

May 7, 1993, ** Submitted, Honolulu, Hawaii

** The panel unanimously finds this case suitable for
submission on the record and briefs and without oral
argument. Fed. R. App. P. 34(a); Ninth Circuit Rule 34-4.

May 11, 1993, Filed

NOTICE: [*1] THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION AND MAY NOT BE
CITED TO OR BY THE COURTS OF THIS CIRCUIT EXCEPT AS PROVIDED BY THE 9TH CIR. R.
36-3.

SUBSEQUENT HISTORY: Reported as Table Case at: 993 F.2d 883, 1993 U.S. App.
LEXIS 18406.

Certiorari Denied March 7, 1994, Reported at: 1994 U.S. LEXIS 2111.

PRIOR HISTORY: Appeal from the United States District Court for the District of
Hawaii, D.C. No. CV-90-0076-DAE, David A. Ezra, District Judge, Presiding

DISPOSITION: AFFIRMED.

CASE SUMMARY

PROCEDURAL POSTURE: Appellant prisoner challenged an order from the United
States District Court for the District of Hawaii, which granted summary judgment
in favor of appellees, doctor and prison employees, in appellant's 42
U.S.C.S. s 1983 action against them alleging that they were deliberately
indifferent to his medical needs in violation of his U.S. Const. amend. VIII
rights.

OVERVIEW: Appellant prisoner filed a 42 U.S.C.S. s 1983 against appellees,
doctor and prison employees, alleging that his U.S. Const. amend. VIII rights
were violated because appellees were deliberately indifferent to his medical
needs related to his glaucoma. The district court granted summary judgment for
appellees, and appellant challenged the ruling. On appeal, the court affirmed,
finding that appellant's brief properly served as his notice of appeal and that,
therefore, the appeal was timely filed. The court ruled that appellee doctor's
choice to treat the glaucoma with drops instead of laser surgery was proper and

that appellee nurse's failure to inform officials that appellant's eyesight was deteriorating was isolated and did not cause him harm. The court also found that appellant failed to even allege that prison officials acted in a wanton manner, which was required to rise to a U.S. Const. amend. VIII violation. Finally, the court noted that the district court properly found that any a 1983 claim against appellees in their official capacities was without merit because they were entitled to immunity and there were no grounds for injunctive relief.

OUTCOME:  The court affirmed the order from the district court that granted summary judgment for appellees, doctor and prison employees, in appellant prisoners civil rights action alleging that they violated his Eighth Amendment rights because they were indifferent to his medical needs. The court ruled that there was no evidence to support appellant's claims and that appellant failed to show that prison officials acted in a wanton manner.

CORE TERMS:  prison, deliberate indifference, notice of appeal, prisoner, Eighth Amendment, glaucoma, clerk, medical treatment, medical condition, summary judgment, deliberately, indifferent, construe, wanton, infliction of pain, injunctive relief, failed to file, medical care, medical need, notice, doctor, opening brief, date of filing, pro se, administrators, indifference, prescribed, liberally, therapy, excerpt

LexisNexis(R) Headnotes  Hide Headnotes

Civil Procedure: Appeals: Reviewability: Notice of Appeal
    [HN1] While a notice of appeal must specifically indicate the litigant's intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts. Thus, the notice afforded by a document determines that document's sufficiency as a notice of appeal. If a document filed within the time specified by Fed. R. Civ. P. 4 gives the notice required by Rule 3, it is effective as a notice of appeal.

Civil Procedure: Appeals: Reviewability: Notice of Appeal
Civil Procedure: Appeals: Briefs
    [HN2] Appellate brief may serve as notice of appeal required by Fed. R. App. P. 3.

Civil Procedure: Summary Judgment
Civil Procedure: Appeals: Standards of Review: De Novo Review
    [HN3] An appellate court reviews the grant of summary judgment de novo.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

    [HN4] The government has an obligation to provide medical care for its prisoners, and deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the U.S.

Const. amend. VIII. Such conduct is actionable under 42 U.S.C.S. a 1983.

Constitutional Law: Cruel & Unusual Punishment
     [HN5] A determination of deliberate indifference to create a U.S. Const. amend. VIII violation involves an analysis of the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

Constitutional Law: Cruel & Unusual Punishment
     [HN6] Deliberate indifference to a prisoner's medical needs may be manifested in two ways. It may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's U.S. Const. amend. VIII needs.

Constitutional Law: Cruel & Unusual Punishment
     [HN7] It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
     [HN8] A state official sued in her official capacity is not a "person" subject to suit under 42 U.S.C.S. a 1983, unless the suit seeks injunctive relief.

JUDGES: Before: GOODWIN, TANG, and, NOONAN, Circuit Judges.

OPINION: MEMORANDUM

    Martinez appeals the grant of summary judgment in favor of Dr. Alan Kunimoto--a private ophthamologist--and Kim Thorburg, Criss Kotz, Charlene Salmaine, William Oku, and Harold Falk--employees of the Halawa Medium Security Facility in Hawaii. Martinez claims that appellees were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights. n1 We affirm.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

    n1 Martinez claimed that appellees "were deliberate [sic] indifference [sic] to his serious medical needs of [sic] which caused unnecessary and wanton suffering that is in violation of petitioners [sic] 5th, & 8th ConSt. [sic] Amendments." Informal Opening Brief at 5. Although we liberally construe a pro se litigant's pleadings, we find that there is no basis for a claim under the Fifth Amendment.  Accordingly, we analyze Martinez's appeal as claiming a violation of the Eighth Amendment, made applicable to the states by the Fourteenth Amendment.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*2]

   I

   We reject, at the outset, appellees' argument that Martinez's appeal is untimely. Martinez improperly filed his notice of appeal on December 31, 1991, prior to the district court's order of January 2, 1992 and prior to the court's entry of final judgment on February 12.  Nonetheless, Martinez filed his opening brief on March 13, within thirty days of the date of the district court's entry of judgment. n2 See Fed. R. App. P. 4,

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

   n2 The date of filing is complicated by an error in the clerk's office. Although the clerk of court received Martinez's opening brief on March 13, it was not filed on that date because Martinez failed to include an excerpt of record. Martinez, however, was proceeding in forma pauperis and was therefore relieved of the requirement to file excerpts of record. Ninth Circuit Rule 24-1. On April 1, pursuant to a court order waiving this requirement, the clerk filed Martinez's brief.  We take notice of the clerk's error and construe the date of filing to be March 13.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

   The Supreme Court[*3] recently announced the principle that governs this case:

     [HN1]
While a notice of appeal must specifically indicate the litigants intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts.  Thus, the notice afforded by a document determines that document's sufficiency as a notice of appeal. If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal.

   Smith v. Barry, 112 S. Ct. 678, 682 (1992) (citations omitted) ( [HN2] appellate brief may serve as notice of appeal required by Rule 3 of Federal Rules of Appellate Procedure).  Martinez's informal brief adequately identifies the basis of his appeal and provides fair notice to appellees, and therefore satisfies the requirement of a timely notice of appeal.

   II

   Martinez, who suffers from glaucoma, alleged several bases for his claim that

appellees were deliberately indifferent to his medical needs: (1) Dr. Kunimoto's inadequate treatment of Martinez, including his decision to treat the disease with drug, rather than laser, therapy, (2) nurse Salmaine's[*4] failure to report a complaint by Martinez regarding his medical condition, (3) the failure of Thorburg and Kotz, respectively the Medical Director and Medical Staff Supervisor, to notify their staff about Martinez's condition, (4) the failure of Falk and Oku, both prison administrators, to maintain sufficient funds to enable Martinez to obtain adequate treatment, and (5) the prison officials' "false prescription" of the generic drug Akarpine, rather than Pilocarpine as prescribed by Dr. Kunimoto, to treat Martinez's glaucoma.

The district court found that Martinez had not established a genuine issue of material fact regarding whether any of the appellees was deliberately indifferent to his medical needs.    [HN3] We review the grant of summary judgment de novo.  Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).

[HN4] The government has an obligation to provide medical care for its prisoners, and "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1975) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).[*5] Such conduct is actionable under 42 U.S.C. a 1983. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

[HN5] A determination of "deliberate indifference" involves an analysis of "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." Id. Glaucoma is a serious medical condition, so our inquiry centers on appellees' response to Martinez's medical needs. Id. (serious medical need exists if failure to treat condition could result in further significant injury or unnecessary infliction of pain). Hutchinson provides the appropriate framework for our analysis:

[HN6]
Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment needs.


838 F.2d at 394 (citations omitted).

Dr. Kunimoto chose to treat Martinez's glaucoma through the use of medicated eye[*6] drops, and he regularly monitored Martinez's eye pressure throughout the course of treatment. Although laser treatment was an alternative treatment option, drug therapy was an acceptable medical procedure.  Dr. Kunimoto's professional conduct was not shown to be negligent nor did it exhibit deliberate indifference to Martinez's medical needs.

Nurse Salmaine failed to file a report detailing Martinez's complaint that the vision in his left eye had significantly deteriorated. Nonetheless, her action was an "isolated occurrence" which cannot be considered deliberate indifference to Martinez's needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Although Salmaine improperly failed to file a report, two days later, on March 13, Martinez himself submitted an inmate request form seeking medical treatment. In response, he was examined by a prison doctor at the end of the month. There is therefore no evidence that Salmaine's action caused substantial harm to Martinez.

Following his examination by a prison doctor at the end of March, Martinez was not treated by Dr. Kunimoto until May 11. Martinez alleges that this lapse in time was due to a lack[*7] of sufficient funds for prisoner medical treatment. He contends that this demonstrates deliberate indifference on the part of two prison administrators, Falk and Oku. Assuming arguendo the truth of Martinez's allegation, a claim under the Eighth Amendment contains a subjective component, requiring an inquiry into the official's state of mind: [HN7] "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Wilson v. Seiter, 111 S. Ct. 2321, 2324 (1991) (emphasis in original) (quoting Whitley v. Albers, 475 U.S. 319, 319 (1986)). Martinez has failed to allege, much less prove, that Falk and Oku were aware of his condition or that they acted in an obdurate or wanton manner.

Similarly, while it is open to question whether the medical supervisors, Thorburg and Katz, notified all personnel regarding Martinez's glaucoma, there is no evidence that they failed[*8] to provide adequate treatment of his condition.

Finally, Akarpine is the generic version of Pilocarpine, which was prescribed by Dr. Kunimoto. Dr. Robert Lau's uncontroverted expert testimony established that the generic version of the medication is as efficacious as the brand name version.

Accordingly, summary judgment with regard to Martinez's claims against all of the appellees was properly granted. n3

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 The district court also correctly held that any claim by Martinez against appellees in their official capacities is without merit. [HN8] A state official sued in her official capacity is not a "person" subject to suit under 42 U.S.C. a 1983, unless the suit seeks injunctive relief. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989). Martinez failed to specify what type of injunctive relief would be appropriate in this case. Although we liberally construe the pleadings of a pro se litigant, we agree with the district court's finding that there does not appear to be any particular

conduct which Martinez seeks to have enjoined.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*9]

   AFFIRMED.


LUCIUS O'BANNER, Plaintiff-Appellant, v. JAMES W. BIZZELL
           and ARTHUR BREWER, Defendants-Appellees.

No. 97-3518

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

1998 U.S. App. LEXIS 17685


July 29, 1998 *, Submitted

    * After an examination of the briefs and record, we have
   concluded that oral argument is unnecessary, and the appeal
   is submitted on the briefs and record. See Fed. R. App. P.
             34(a); Cir. R. 34(f).
           July 30, 1998, Decided

NOTICE: [*1] RULES OF THE SEVENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO
UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF
APPEALS FOR THIS CIRCUIT.

SUBSEQUENT HISTORY: Reported in Table Case Format at: 1998 U.S. App. LEXIS
24195.

PRIOR HISTORY: Appeal from the United States District Court for the Northern
District of Illinois, Eastern Division. No. 92 C 7435. John A. Nordberg, Judge.

DISPOSITION: AFFIRMED.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate filed a suit under 42 U.S.C.S. @ 1983
against defendants, a prison physician and the prison's former medical director,
alleging that defendant's failure to treat him properly violated his Eighth
Amendment right to be free from cruel and unusual punishment. The United States
District Court for the Northern District of Illinois, Eastern Division, granted
summary judgment to defendants, and the inmate appealed.

OVERVIEW:  The inmate claimed that defendants, by failing properly to treat his glaucoma or to arrange treatment for it, violated his Eighth Amendment right to be free from cruel and unusual punishment. As a result of defendants' inadequate treatment, the inmate alleged that he had gone blind. The inmate submitted the affidavit of an independent ophthalmologist who averred that the prison physician was "grossly negligent" for a long period of time. In affirming summary judgment, the court observed that medical malpractice in the form of an incorrect diagnosis or improper treatment did not state an Eighth Amendment claim and that mere negligence or even gross negligence did not constitute deliberate indifference. The court ruled that the inmate failed to present a material issue of fact with regard to either defendants' state of mind and that, at most, the inmate showed that defendants were repeatedly and grossly negligent. Nothing in the record even remotely suggested that either defendant knowingly disregarded an impending harm easily preventable.

OUTCOME:  The court affirmed summary judgment in favor of defendants.

CORE TERMS:  glaucoma, Eighth Amendment, summary judgment, deliberate indifference, specialist, subjective, right eye, cruel and unusual punishment, grossly negligent, substantial risk, state of mind, ophthalmologist, erroneously, preventable, impending, checking, inmate, medical condition, recommendation, prescribing, prescribed, blindness, disease, blind

LexisNexis(R) Headnotes  Hide Headnotes

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
Civil Procedure: Appeals: Standards of Review: Standards Generally
    [HN1] An appellate court reviews a grant of summary judgment de novo; the record and all inferences drawn therefrom will be viewed in the light most favorable to the non-movant. A court may grant summary judgment only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Constitutional Law: Cruel & Unusual Punishment
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights
    [HN2] The Eighth Amendment proscribes cruel and unusual punishments. U.S. Const. amend. VIII. Prison officials violate the Eighth Amendment when their conduct demonstrates deliberate indifference to serious medical needs of prisoners. The standard involves both an objective element and a subjective element. In the context of medical care, the objective element requires that the inmate's medical need be sufficiently serious. The subjective element requires that an official act with a sufficiently culpable state of mind: he must know of and disregard an excessive risk to inmate health or safety, he must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The conduct must be

deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable.

Constitutional Law: Cruel & Unusual Punishment
Torts: Malpractice Liability: Healthcare Providers
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN3] With respect to the subjective element of an Eighth Amendment cruel and unusual punishment claim, the United States Court of Appeals for the Seventh Circuit has frequently noted that medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim. U.S. Const. amend. VIII. Mere negligence or even gross negligence does not constitute deliberate indifference. A series of acts of negligence is merely evidentiary; it is not an alternative theory of liability.

COUNSEL: LUCIUS O'BANNER, Plaintiff - Appellant, Pro se, Ina, IL USA.

For ARTHUR BREWER, Doctor, SALVADOR A. GODINEZ, JAMES W. BIZZELL, Doctor, Defendants - Appellees: Erik G. Light, OFFICE OF THE ATTORNEY GENERAL, Chicago, IL USA.

JUDGES: Before Hon. Richard A. Posner, Chief Judge, Hon. William J. Bauer, Circuit Judge, Hon. Daniel A. Manion, Circuit Judge.

OPINION: ORDER

Lucius O'Banner filed an action under 42 U.S.C. a 1983 against Dr. James Bizzell and Dr. Arthur Brewer, respectively an ophthalmologist and the former Medical Director at Stateville Correctional Center. O'Banner alleged that the defendants, by failing properly to treat his glaucoma or to arrange treatment for it, violated his Eighth Amendment right to[*2] be free from cruel and unusual punishment. The district court held that O'Banner had failed to raise a genuine issue of material fact; accordingly, the court granted the defendants' motion for summary judgment. We affirm.

Background

Lucius O'Banner was incarcerated at Stateville Correctional Center from August, 1990 to March, 1993. O'Banner had been treated for glaucoma since 1980. Glaucoma involves an increase of pressure in the eye that can result in blindness if untreated, as built-up pressure can destroy the optic nerve. Shortly after O'Banner's arrival at Stateville, a member of the Stateville medical staff examined him and prescribed Timoptic, a medication for treating glaucoma. On September 21, 1990, Dr. Bizzell examined O'Banner for the first time, diagnosed him with right eye advanced optic atrophy, and continued prescribing Timoptic. O'Banner was almost blind in his right eye at that time.

Subsequently, Bizzell examined and treated O'Banner on at least ten occasions

in 1991 and 1992. During these examinations Bizzell checked and recorded the pressures in O'Banner's eyes. Bizzell reported that the pressures were controlled or normal.

Dr. Brewer was the Stateville[*3] Medical Director during O'Banner's period of incarceration there. Brewer examined O'Banner on various occasions, including August 5, 1991, October 7, 1991, April 6, 1992, and March 10, 1993. O'Banner wrote several letters to Brewer complaining about his treatment and requesting to consult an outside specialist. In 1992, Brewer approved medical furloughs for O'Banner to see specialists at the University of Illinois Eye Clinic on six different occasions. Results from examinations conducted at the University of Illinois indicated that the pressure in O'Banner's right eye was high. At the recommendation of an outside specialist, Brewer prescribed a different eye-medication, Pilocarpine, on February 25, 1992.

On November 12, 1992, O'Banner filed a complaint under 42 U.S.C. a 1983 against Bizzell, Brewer, and Salvador Godinez, then the warden at Stateville. O'Banner alleged that the defendants' treatment of his glaucoma was inadequate and constituted cruel and unusual punishment in violation of the Eighth Amendment. As a result of defendants' inadequate treatment, O'Banner alleged that he had gone blind. O'Banner submitted the affidavit of Dr. Mark Brower, an independent[*4] ophthalmologist who reviewed O'Banner's medical records. Brower stated that Bizzell was "grossly negligent" for a long period of time in erroneously checking O'Banner's eye pressures, in erroneously checking his vision, and in failing to administer a visual field test.

On July 18, 1995, the district court granted Godinez' motion to dismiss for failure to state a claim. On September 2, 1997, the district court granted summary judgment in favor of Bizzell and Brewer. O'Banner appeals the district court's grant of summary judgment in favor of Bizzell and Brewer. O'Banner does not appeal the dismissal of Godinez.

Analysis

[HN1] We review a grant of summary judgment de novo; the record and all inferences drawn therefrom will be viewed in the light most favorable to O'Banner, the non-movant. See Johnson v. City of Ft. Wayne, 91 F.3d 922, 930 (7th Cir. 1996). A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), [*5]

[HN2] The Eighth Amendment proscribes cruel and unusual punishments. Prison officials violate the Eighth Amendment "when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)). The standard involves "both an objective element and a subjective element." Id. In the

context of medical care, "the objective element requires that the inmate's medical need be sufficiently serious." 111 F.3d at 1369. The subjective element requires that an official act with a "sufficiently culpable state of mind": he must "know[] of and disregard[] an excessive risk to inmate health or safety; he must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 834, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). The conduct "must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed [*6]an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1995).

Glaucoma causes blindness; its progression (and in 1990 O'Banner had been suffering from the disease for ten years) is marked by severe migraine headaches. The disease is manifestly a sufficiently serious medical condition to satisfy the objective element of the deliberate indifference standard.

[HN3] With respect to the subjective element, this court has frequently noted that "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997). "Mere negligence or even gross negligence does not constitute deliberate indifference." Snipes V. DeTella, 95 F.3d 586, 590 (7th Cir. 1996). A series of acts of negligence "is merely evidentiary; it is not an alternative theory of liability." Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994).

While we acknowledge Dr. Brower's "opinion to a reasonable degree of[*7] medical certainty that Dr. James Bizzell was deliberately indifferent in his treatment of Mr. O'Banner's serious medical condition" (R. # 56, Attach. to Pl.'s Resp. to Defs.' Mot. for Summ. J. at 1), ultimately we agree with the district court's determination that O'Banner failed to present a material issue of fact with regard to either of the defendants' state of mind. At most, O'Banner has shown that Bizzell and Brewer were repeatedly and grossly negligent. Bizzell frequently examined O'Banner and prescribed medication; whether he was sufficiently competent in performing his diagnoses is not pertinent to O'Banner's claim that he acted with deliberate indifference. Similarly, Brewer examined O'Banner on numerous occasions and even referred him to outside specialists, whose recommendations he followed in prescribing further treatment.

O'Banner has simply not presented any evidence that Brewer and Bizzell acted with actual knowledge of or reckless disregard for a substantial risk to him. Nothing in the record even remotely suggests that either Bizzell or Brewer knowingly disregarded an "impending harm easily preventable." Antonelli, 81 F.3d at 1427. Since O'Banner[*8] has failed to come forward with evidence that Bizzell or Brewer conducted themselves in anything other than a negligent manner, we AFFIRM the district court's ruling.

BRUCE WAPLES, Plaintiff, v. RICK KEARNEY and MEDICAL
DEPARTMENT, Defendants.

Civil Action No.: 00-210-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2001 U.S. Dist. LEXIS 9050

March 13, 2001, Decided

DISPOSITION: [*1] Kearney's and PHS's Motions to Dismiss GRANTED pursuant to
Fed. R. Civ. P. 12(b)(6), Waples' complaint DISMISSED.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff, pro se prisoner, sued defendants, the warden and
the prison medical department, under 42 U.S.C.S. a 1983 alleging that he
was deprived of proper medical care in violation of the Eighth Amendment. The
warden and the medical department filed separate motions to dismiss for failure
to state a claim upon which relief could be granted pursuant to Fed. R. Civ.
P. 12(b)(6).

OVERVIEW:  In order to hold the warden liable, the prisoner had to allege an act
or omission by the warden that demonstrated deliberate indifference to his
serious medical needs. The prisoner did not contend that the warden was
personally involved in the medical care provided to him. Absent some sort of
personal involvement in the allegedly unconstitutional conduct, the warden could
not be held liable under a respondeat superior theory. As for the medical
department, the prisoner's allegations failed to satisfy the deliberate
indifference prong of the test for liability for an Eighth Amendment violation.
The allegations of the complaint, even when construed in a light most favorable
to the prisoner, did not support a a 1983 claim against the medical department.

OUTCOME:  The court granted the warden's and the health department's motions to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed the complaint.

CORE TERMS:  deliberate indifference, medical care, deprived, prong, Eighth
Amendment, infliction of pain, motions to dismiss, medical attention,
incarcerated, omission, wanton, warden, constitutional right, color of state
law, motion to dismiss, prison official, state of mind, pro se, deliberately,
indifferent, presently, favorable, prisoner, culpable, inmate, top

LexisNexis(R) Headnotes  Hide Headnotes

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN1] See 42 U.S.C.S. a 1983.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

[HN2] In ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true. Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. A court should dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties

[HN3] Where the plaintiff is pro se, the court must interpret his allegations liberally and must hold them to less stringent standards than formal pleadings drafted by lawyers.

Constitutional Law: Cruel & Unusual Punishment

[HN4] A state has an obligation to provide adequate medical care to the individuals who are incarcerated in its prisons. To recover for the denial of medical care, a prisoner must show that a prison official or employee was deliberately indifferent to his serious medical needs or acted with reckless disregard for his condition.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss
Constitutional Law: Cruel & Unusual Punishment

[HN5] In order to withstand a motion to dismiss, a claim that prison authorities provided inadequate medical care in violation of Eighth Amendment protections must include acts or omissions by a defendant that evidence deliberate indifference towards serious medical needs.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN6] The deliberate indifference prong is met only if the prison official knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. Mere allegations of negligence do not meet the pleading standards for deliberate indifference. Nor can the claim rest solely on the prisoner's dissatisfaction with the medical care he has received.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN7] An inmate's condition is "serious" when it is so obvious that an ordinary person would easily recognize the need for a doctor's attention or when a physician has concluded that treatment is required. The "seriousness" prong is

met also if the effect of denying or delaying care results in wanton infliction of pain or a life-long handicap or permanent loss. In addition, the condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death.

Labor & Employment Law: Employer Liability: Tort Liability: Respondeat Superior
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN8] Absent some sort of personal involvement in the allegedly unconstitutional conduct, a defendant cannot be held liable under a respondeat superior theory for an Eighth Amendment violation brought under 42 U.S.C.S. a 1983.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN9] A mere difference of opinion regarding the need for treatment, the preferred course of treatment, the severity of the alleged injury, or other medical judgment does not constitute a showing of deliberate indifference. Moreover, it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference.

COUNSEL: BRUCE WAPLES, plaintiff, Pro se, Georgetown, DE.

For RICK KEARNY, defendant: Stuart B. Drowos, Department of Justice, State of Delaware, Wilmington, DE.

For MEDICAL DEPARTMENT, defendant: Seth Jason Reidenberg, White & Williams, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION: MEMORANDUM AND ORDER

In March of 2000, Bruce L. Waples ("Waples") filed this pro se prisoner civil rights action against Rick Kearney ("Kearney"), in his capacity as warden, and Prison Health Services ("PHS") (collectively, "the defendants"). n1 Waples is presently incarcerated at the Sussex Correctional Institute ("S.C.I.") in Georgetown, Delaware. In his complaint, Waples alleges that the defendants deprived him of proper medical care in violation of the Eighth Amendment. See 42 U.S.C. a 1983 (1994). n2 In support of his allegations, Waples claims that something "popped" in his back while he was a pretrial detainee. According to Waples, this injury makes it difficult for him to climb into the top[*2] bunk in his cell and is causing him constant problems and pain. Waples also claims that, as a result of his injury, he was forced to sleep on the floor for approximately two to three weeks. For these alleged wrongs, Waples is seeking



monetary relief as well as proper medical attention.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 Waples originally named the Medical Department as a defendant. In its motion, PHS noted that it was the correct defendant because it was the organization contracted with the State of Delaware to operate the medical department at S.C.I.

n2     [HN1]  42 U.S.C. a 1983 states: Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

[*3]

Presently before the court are the defendant's separate motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Waples has failed to state a claim upon which relief can be granted, the court will grant the defendants' motions. The following sections discuss the basis for this decision more thoroughly.

I. STANDARD OF REVIEW

[HN2] In ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true. See Graves v. Lowery, 117 F.3d 723, 726 (3d Cir. 1997); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. See Jenkins v. McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969); Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." See Graves, 117 F.3d at 726; Nami, 82 F.3d at 65[*4] (both citing Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). In addition, [HN3] because Waples is pro se, the court must interpret his allegations liberally and must hold them to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); Zilich v. Lucht, 981 F.2d 694 (3d Cir. 1992).

II. DISCUSSION

In order to recover against the defendants, Waples must show that he was

deprived of a constitutional right by a person acting under the color of state law. See, e.g., Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Gomez v. Toledo, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980)). In this case, it is clear that the defendants were acting under color of state law because, at the time of the alleged incident, they were correctional officials or an agent at the institution where Waples was incarcerated. See Cespedes v. Coughlin, 956 F. Supp. 454, 465 (S.D.N.Y. 1997). Therefore, the court next turns to whether Waples has sufficiently[*5] alleged that any of the defendants deprived him of a constitutional right.

[HN4] The State of Delaware has an obligation to provide "adequate medical care" to the individuals who are incarcerated in its prisons. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citations omitted). To recover for the denial of medical care, Waples must show that a prison official or employee was deliberately indifferent to his serious medical needs or acted with reckless disregard for his condition. See Miller v. Correctional Medical Sys., Inc., 802 F. Supp. 1126, 1130 (D. Del. 1992).

Thus,      [HN5] in order to withstand a motion to dismiss, a claim that prison authorities provided inadequate medical care in violation of Eighth Amendment protections must include acts or omissions by a defendant that evidence deliberate indifference towards serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (stating that to succeed on such claims, plaintiffs must demonstrate that: "(1) the defendants were deliberately indifferent to[*6] their medical needs and (2) that those needs were serious.").

[HN6] The deliberate indifference prong is met only if the prison official "knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994); Rouse, 182 F.3d at 197. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. Wilson v. Seiter, 501 U.S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991); Rouse, 182 F.3d at 197. Mere allegations of negligence do not meet the pleading standards for deliberate indifference. See Estelle, 429 U.S. at 105-106. Nor can the claim rest solely on the prisoner's dissatisfaction with the medical care he has received. Id. at 107.

[HN7] An inmate's condition is "serious" when it is so obvious that an ordinary person would easily recognize the need for a doctor's attention or when a physician[*7] has concluded that treatment is required. See Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326 (3d Cir.1987)). The "seriousness" prong is met also if the effect of denying or delaying care results in wanton infliction of pain or a life-long handicap or permanent loss. Id. In addition, the "condition must be such that a failure to treat can be

expected to lead to substantial and unnecessary suffering, injury or death." See Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991).

With these standards in mind, the court turns to an analysis of Waples' claim that the defendants deprived him of proper medical care.

A. WARDEN KEARNEY

In order to hold Kearney liable, Waples must allege an act or omission by Kearney that demonstrates deliberate indifference to his serious medical needs. See City of Canton v. Harris, 489 U.S. 378, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). In his complaint, Waples does not contend that Kearney was personally involved in the medical care provided to him. Rather, Waples asserts "Kearny [sic] . [*8] . . he is the warden . . . he is responsible for his staff." Thus, the Waples' claim against Kearney is premised on the doctrine of respondeat superior. It is well established, however, that    [HN8] absent some sort of personal involvement in the allegedly unconstitutional conduct, a defendant cannot be held liable under a respondeat superior theory. See Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994); Gay v. Petsock, 917 F.2d 768 (3d Cir. 1990). Because Waples complaint fails to allege any act or omission of Kearney that demonstrates deliberate indifference to Waples serious medical needs, the claim against Kearney must be dismissed.

B. PHS

Waples alleges that the medical department knew of his medical history and that when he informed them several times that he was having trouble getting on the top bed, he was denied proper medical attention. These allegations fail to establish that PHS conduct constituted an "unnecessary and wanton infliction of pain" as proscribed by the Eighth Amendment." See Estelle v. Gamble, 429 U.S. at 104. Although Waples may disagree with the medical experts on what he feels is proper[*9] medical attention,    [HN9] a mere difference of opinion regarding the need for treatment, the preferred course of treatment, the severity of the alleged injury, or other medical judgment does not constitute a showing of deliberate indifference. See White v. Napoleon, 897 F.2d 103, 110 (3rd Cir. 1990). Moreover, it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference. See Estelle, 429 U.S. at 105; Rouse, 182 F.3d at 196. Therefore, Waples' allegations against PHS fail to satisfy the deliberate indifference prong of the Estelle test n3.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 Because Waples has failed to satisfy the deliberate indifference prong, the court does not reach the question of whether Waples injuries were sufficiently serious.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

In sum, the allegations of the complaint, even when construed in a light most favorable to plaintiff, do not support a Section 1983 claim against PHS n4. Thus, Waples' claim[*10] against Kearney and PHS must be dismissed n5.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n4 The complaint could have alternatively been dismissed for failing to exhaust the administrative remedies available to Waples prior to filing a a 1983 action as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. a 1997e(a). Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000).

n5 On October 20, 2000, defendant PHS filed a Motion to Stay Proceedings Pending Resolution of the motions to dismiss. By virtue of the court's disposition of the motions to dismiss, the motion to stay is rendered moot.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

For these reasons IT IS HEREBY ORDERED that:

1. Kearney's Motion to Dismiss (D.I. 16) is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6).

2. PHS's Motion to Dismiss (D.I. 18) is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6).

3. Waples' complaint (D.I. 2) is DISMISSED.

Dated: March 13, 2001

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

RICHARD M. CROSS, Plaintiff(s), vs. ROBERT L. AYERS, Warden,
Defendant(s).

No. C 97-4108 VRW (PR)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

1998 U.S. Dist. LEXIS 16546

October 6, 1998, Decided
October 6, 1998, Filed

DISPOSITION: [*1] Defendant's motion to dismiss GRANTED. Judgment entered in
favor of defendant and against plaintiff.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate brought a cause of action pursuant to
42 U.S.C.S. a 1983 against defendant warden and alleged that he had not
received proper medical care for chest pains. The warden filed a motion to
dismiss under Fed. R. Civ. P. 12(b)(6).

OVERVIEW:  The inmate asserted that the prison medical staff had been
deliberately indifferent to his medical needs. In response to the inmate's
medical complaints, the medical staff had seen the inmate over a dozen times,
taken x-rays, blood, and gall bladder tests, administered two EKGs, a nerve
conduction study and referred him to a neurologist for consultation. The medical
staff determined that the inmate's chest pains were likely due to gas and
advised that he not swallow and to try burping to remove the gas bubbles. The
court granted the warden's motion and found that the complaint and exhibits
unequivocally showed that the medical staff did not disregard the inmate's
medical complaints or fail to take reasonable steps to abate them. The court
reasoned that the inmate's disagreement with the medical advice and diagnosis
did not equate to deliberate indifference by the medical staff.

OUTCOME:  The court granted the warden's motion to dismiss and dismissed the
inmate's a 1983 claim that he had not received proper medical care for chest
pains.

CORE TERMS:  medical staff, motion to dismiss, failure to state a claim,
deliberately, indifferent, prisoner, chest, Eighth Amendment, prison official,
prison, abate, pains, bubble

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

[HN1] Dismissal is appropriate if plaintiff fails to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim, however, unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Dismissal for failure to state a claim is a ruling on a question of law. Review is limited to the contents of the complaint and any attached exhibits. Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. From the facts alleged, a court also must draw all reasonable inferences in favor of the nonmoving party. But conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN2] A prison official violates the Eighth Amendment if he is deliberately indifferent to a prisoner's serious medical need. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. A difference of opinion as to treatment is not sufficient, as a matter of law, to establish deliberate indifference.

COUNSEL: RICHARD M. CROSS, Plaintiff, Pro se, Crescent City, CA.

For PELICAN BAY STAY PRISON, ROBERT L. AYERS, defendants: James M. Humes, Deputy Attorney Gen., CA State Attorney General's Office, San Francisco, CA.

JUDGES: VAUGHN R. WALKER, United States District Judge.

OPINIONBY: VAUGHN R. WALKER

OPINION: ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff, a prisoner at Pelican Bay State Prison, filed the instant pro se civil rights action under 42 USC a 1983 alleging that he has not received proper medical care for chest pains. Per orders filed on December 9, 1997 and May 4, 1998, the court found that plaintiff's allegations, liberally construed, stated a cognizable claim for injunctive relief against the warden and ordered the U.S. Marshal to serve him. Defendant now moves for dismissal under Federal Rule of Civil Procedure 12(b)(6).

DISCUSSION
A. Standard of Review

[HN1] Dismissal is appropriate if plaintiff fails to state a claim upon which relief can be granted. See Fed R Civ P 12(b)(6). A complaint should not be dismissed for failure to state a claim, however, unless it appears[*2] beyond doubt that plaintiff can prove no set of facts in support of his claim

which would entitle him to relief. See Terracom v Valley Nat'l Bank, 49 F.3d 555, 558 (9th Cir 1995). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v Symington, 51 F.3d 1480, 1483 (9th Cir 1995).

Review is limited to the contents of the complaint and any attached exhibits. See id at 1484. Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. See id. From the facts alleged, the court also must draw all reasonable inferences in favor of the nonmoving party. See Usher v City of Los Angeles, 828 F.2d 556, 561 (9th Cir 1987). But conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim. See McGlinchy v Shell Chemical Co., 845 F.2d 802, 810 (9th Cir 1988).

B. Analysis

[HN2] A prison official violates the Eighth Amendment if he is deliberately indifferent to a prisoner's serious medical need. See Estelle v Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). A prison official is deliberately[*3] indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See Farmer v Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). A difference of opinion as to treatment is not sufficient, as a matter of law, to establish deliberate indifference. See Sanchez v Vild, 891 F.2d 240, 242 (9th Cir 1989).

Here, plaintiff claims that prison medical staff have been deliberately indifferent to his medical needs because they have not properly diagnosed and treated his chest pains. The complaint and attached exhibits show that prison medical staff have addressed and evaluated plaintiff's complaints frequently and exhaustively and diagonosed them as likely due to gas. The exhibits specifically show that in response to plaintiff's complaints, medical staff have seen plaintiff more than a dozen times over a two-year period, taken x-rays, blood and gall bladder tests, administered two EKGs, a nerve conduction study and even referred him to a neurologist for consultation. There has been no evidence of cardiac or neurological disease. On July 25, 1997, plaintiff was examined by Dr. D. [*4] Thor after a repeat EKG. Dr. Thor noted that the EKG was normal but that plaintiff appeared to have been swallowing air (aerophagia) and had a large gas bubble in his mid to left upper quadrant-lower left chest. Plaintiff was advised to eliminate this habit and to try burping to remove the gas bubbles.

The complaint and exhibits unequivocally show that medical staff have not disregarded plaintiff's complaints or failed to take reasonable steps to abate them. See Farmer, 511 U.S. at 837. Plaintiff simply disagrees with the uniform judgment and diagnosis of medical staff. Plaintiff's disagreement does not give rise to an Eighth Amendment claim for which he is entitled to relief. See Sanchez, 891 F.2d at 242. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n1 There is no indication that this case presents the rare scenario in which the course of treatment medical staff chose was medically unacceptable under the circumstances and in which they chose this course in conscious disregard of an excessive risk to plaintiff's health. Cf Jackson v McIntosh, 90 F.3d 330, 332 (9th Cir 1996).


- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*5]

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

The Clerk shall enter judgment in favor of defendant and close the file.

SO ORDERED.

VAUGHN R. WALKER

United States District Judge

JUDGMENT. - ENTERED IN CIVIL DOCKET OCT 07 1998

Fed. R. Civ. Pro. 58

In accordance with the court's order of October 6, 1998, defendant's motion to dismiss is GRANTED. Judgment is entered in favor of defendant and against plaintiff.

Dated: 10-6-98

TIMOTHY M. FILLEBROWN, Plaintiff vd. RICK ZETTLEMOYER,
DEBBIE COMP, BRENDA PITRIZZO, and HEATHER FLURER, in their
official and individual capacities, Defendants

CIVIL ACTION No. 95-4394

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

1996 U.S. Dist. LEXIS 11495

August 8, 1996, Decided
August 9, 1996, FILED

DISPOSITION: [*1] Defendants' Motion for Summary Judgment granted.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff pre-trial detainee brought a 42 U.S.C.S. a
1983 claim against defendants, a prison warden and members of the prison staff,
claiming violation of his constitutional rights to due process in both the
medical treatment given him and the conditions of confinement. Before the court
was the motion for summary judgment of the warden and prison staff.

OVERVIEW:  The pre-trial detainee, who weighed approximately 250 pounds, was
hurt when he fell from a prison bunk bed that tilted as he tossed and turned in
it. In his a 1983 action, he claimed the bed was defectively designed and
maintained and that the medical care he was given as a result of the fall was
inadequate. Because plaintiff was not a convicted prisoner when the alleged
unconstitutional conduct occurred, his claims had to be judged under Fourteenth
Amendment standards, an essential element of which required showing deliberate
indifference by the warden and prison staff with respect to the medical care
given the pre-trial detainee and the conditions of confinement. Granting summary
judgment to the warden and prison staff, the court found that deliberate
indifference was missing from both claims. With respect to the medical care,
because the warden and staff relied on the advice of a treating physician, which
they were allowed to do, deliberate indifference was missing. Deliberate
indifference was also not shown with respect to the bunk bed, because it was a
standard model, and there was no evidence that the staff or warden had any prior
knowledge of problems relating to it.

OUTCOME:  The court granted summary judgment to the warden and prison staff in
the civil rights action filed against it by the pre-trial detainee.

CORE TERMS:  prison, bunk, inmate, summary judgment, medical care, bunk bed,
indifferent, infirmary, conditions of confinement, deliberate indifference,
deliberately, treating physician, prisoner, detainee, pre-trial, staff, medical
treatment, Eighth Amendment, professional judgment, bed, Fourteenth Amendment,
defectively designed, doctor, deposition, top, entitled to summary judgment,

cruel and unusual punishment, constitutional violation, infliction of pain, failure to provide

LexisNexis(R) Headnotes  Hide Headnotes

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
    [HN1] Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In order to defeat a motion for summary judgment, the nonmoving party must adduce more than a mere scintilla of evidence in its favor.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Substantive Due Process: Scope of Protection
    [HN2] A pre-trial detainee's claims of alleged unconstitutional conduct must be evaluated under the Fourteenth Amendment rather than the Eighth Amendment to the United States Constitution. Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions. The inquiry under the Fourteenth Amendment is whether the conditions of confinement or the inadequacy of medical care received by the plaintiff amount to punishment of the detainee or are mere incident of legitimate regulatory restraint. The United States Court of Appeals for the Third Circuit has held that the standards for determining whether conditions of confinement, including medical care, can be considered impermissible "punishment" are essentially the same as those for determining whether prison conditions violate the Eighth Amendment.

Constitutional Law: Substantive Due Process: Scope of Protection
    [HN3] Whether one characterizes the treatment received by an inmate as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard to the defendants.

Constitutional Law: Cruel & Unusual Punishment
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights
    [HN4] The United States Supreme Court has held that, although an accidental or inadvertent failure to provide adequate medical care to a prisoner would not rise to the level of a constitutional violation, deliberate indifference to serious medical needs of prisoners would constitute an unnecessary and wanton infliction of pain and thus would violate the Eighth Amendment's prohibition against cruel and unusual punishment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying

access to medical care or intentionally interfering with the treatment once
prescribed. In order to establish that prison officials were deliberately
indifferent to an inmate's serious medical needs, an inmate must provide
evidence that the officials had actual knowledge of his objectively serious
medical condition, and deliberately denied or delayed adequate treatment for
that condition.

Constitutional Law: Cruel & Unusual Punishment
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
    [HN5] In the medical context, an inadvertent failure to provide adequate
medical care cannot be said to constitute an unnecessary and wanton infliction
of pain or to be repugnant to the conscience of mankind. The law is clear that
simple medical malpractice is insufficient to present a constitutional
violation; a prisoner must show more than negligence; he must show deliberate
indifference to a serious medical need.

Constitutional Law: Substantive Due Process: Scope of Protection
    [HN6] Prison administrators and the nursing staff of a prison infirmary
cannot be found to be deliberately indifferent for failing to defer to an
inmate's judgment about appropriate diagnostic care when it contradicts the
recommendations of the treating physician.

Labor & Employment Law: Employer Liability: Tort Liability: Respondeat Superior
Torts: Vicarious Liability: Respondeat Superior
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

plaintiff--that the prison warden participated in the alleged wrongdoing by
having actual knowledge of the plaintiff's situation and acquiescing in its
occurrence or continuation, the plaintiff has not stated a 42 U.S.C.S. a
1983 claim involving supervisory liability against the warden.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
    [HN8] The standard set forth in precedent affords considerable latitude
to prison medical authorities in the diagnosis and treatment of the medical
problems of inmate patients.

Governments: State & Territorial Governments: Claims By & Against
Constitutional Law: Substantive Due Process: Scope of Protection
    [HN9] The Due Process Clause is not implicated by a state official's
negligent conduct causing unintended loss of or injury to life, liberty or
property.

Constitutional Law: Substantive Due Process: Scope of Protection
    [HN10] Pre-trial detainees must show that prison conditions are the
product of punitive intent on the part of state actors in order to state a due
process claim.

COUNSEL: TIMOTHY M. FILLEBROWN, PLAINTIFF, [PRO SE], BETHLEHEM, PA, USA.

For RICK ZETTLEMOYER, DEBBIE COMP, BRENDA PITRIZZO, HEATHER FLURER, IN THEIR OFFICIAL/INDIVIDUAL CAPACITIES, DEFENDANTS: RALPH J. BELLAFATTO, TEEL, STETTZ, SHIMER & DI GIACOMO, LTD., EASTON, PA, USA.

JUDGES: JAN E. DUBOIS, JUDGE

OPINIONBY: JAN E. DUBOIS

OPINION: MEMORANDUM

DUBOIS, J.
AUGUST 8, 1996

   Presently before the Court is defendant's Motion for Summary Judgment on plaintiff's pro se civil rights suit brought under 42 U.S.C. a 1983. The Motion will be granted for the reasons set forth below.

I. BACKGROUND

   Plaintiff, a pre-trial detainee at Northampton County Prison in Easton, Pennsylvania, was injured when he fell from a standard model prison bunk bed on October 29, 1994. He subsequently filed suit under 42 U.S.C. a 1983 against Rick Zettlemoyer, Warden of Northampton County Prison ["Warden Zettlemoyer"], and members of the prison infirmary staff who treated him for his injuries, Debbie Comp ("Nurse Comp"), Brenda Pitrizzo ("Pitrizzo") and Heather Flurer ("Flurer"). n1

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n1 The defendants named in the caption and in the part of the Eastern District of Pennsylvania's Complaint form for identification of defendants are those listed above. These defendants were the only ones served with copies of the Summons and Complaint. Consequently, the two other persons identified as defendants in the part of the Complaint entitled "Statement of Legal Claim," a person named "Orlander" who is not otherwise identified, and the "Doctor of the Medical Department of the Northampton County Prison," are not considered by the Court to be defendants in this case.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*2]

   In his pro se Complaint, plaintiff makes two claims under the Fourteenth Amendment to the United States Constitution alleging that: (1) the bunk bed from which he fell was defectively designed and maintained, and (2) his medical treatment for the head injury he sustained in his fall was inadequate. Plaintiff demands $ 100,000 in compensatory damages for pain and suffering, and

for the emotional distress he allegedly experienced as a result of the defendant's conduct. He also demands punitive damages in the amount of $ 500,000.00.

The allegations as set forth in the Complaint and supplemented by plaintiff's deposition and medical records are as follows:

A few days before the accident occurred, plaintiff, who was assigned to sleep in the top bunk of a standard model metal bunk bed, requested re-assignment to a lower bunk, claiming that his pre-existing back injury was aggravated when he climbed into and out of the top bunk. Plaintiff also complained that his weight--approximately 250 pounds--presented additional difficulties in using the upper bunk. In his request, plaintiff did not mention the condition of the bed, nor did he state that it was defectively designed.

At approximately[*3] 10:00 in the morning of October 29, 1994, plaintiff fell from the top bunk and lacerated his scalp. Guards arrived at plaintiff's cell within five to ten minutes of the accident and escorted him to the prison infirmary. Nurse Comp, who was on duty at the time, cleaned plaintiff's laceration with sterile water and bandaged it. Plaintiff was immediately taken to Easton Hospital where he was admitted at 11:15 a.m., and examined by Dr. Kathleen Meehan who sutured the laceration.

When plaintiff returned to the prison, he was again seen by infirmary personnel who, in accordance with the hospital's outpatient discharge instructions, gave plaintiff Tylenol, an extra pillow, and special permission to use the bottom bunk. In the weeks following his injury, plaintiff experienced what he described as severe headaches, nausea and dizziness and was seen on several occasions in the prison infirmary. On those occasions he complained about his symptoms to Nurses Comp and Pitrizzo, who prescribed Tylenol for the pain. Nine months after the accident, plaintiff filed this suit.

Defendants filed the instant Motion for Summary Judgment on February 14, 1996. In its March 28, 1996 Order, the Court instructed[*4] plaintiff to respond to defendants' Motion, or to request additional time to respond by April 15, 1996. As plaintiff has neither responded nor sought additional time to do so, the Court will decide the Motion for Summary Judgment based on the submissions of the parties to date, that is, plaintiff's deposition and medical records, and the affidavit of Warden Zettlemoyer.

II. DISCUSSION

[HN1] Summary Judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 413 (3d Cir. 1990). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In order to defeat a motion for summary judgment, "the nonmoving party must adduce more[*5] than a mere scintilla of evidence in its favor." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

Because plaintiff was       [HN2] a pre-trial detainee, not a convicted prisoner, during the period when the alleged unconstitutional conduct occurred, his claims must be evaluated under the Fourteenth Amendment rather than the Eighth Amendment to the United States Constitution.  Bell v. Wolfish, 441 U.S. 520, 535, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979) (recognizing that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"). The inquiry under the Fourteenth Amendment is whether the conditions of confinement or the inadequacy of medical care received by plaintiff "amount to punishment of the detainee" or a mere incident of legitimate regulatory restraint.  Id. at 535, 537. The Third Circuit has held that the standards for determining whether conditions of confinement, including medical care, can be considered impermissible "punishment" are essentially the same as those for determining whether prison conditions violate the Eighth Amendment under Estelle v. [*6] Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987), cert. denied 485 U.S. 991, 99 L. Ed. 2d 508, 108 S. Ct. 1298 (1988). See also Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326 (3d. Cir. 1987), cert. denied 486 U.S. 1006, 100 L. Ed. 2d 195, 108 S. Ct. 1731 (1988).

For plaintiff's claims to survive summary judgment, he must produce some evidence that defendants acted with the necessary culpable state of mind in allowing him to be subjected to unconstitutional conditions of confinement or in withholding adequate medical care. Estelle, 429 U.S. at 106. Specifically, plaintiff must show that defendants were deliberately indifferent to dangerous prison conditions or to his serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 305, 309, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991) (holding that
[HN3] "whether one characterizes the treatment received by [the inmate] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle").

A. Inadequate [*7]  Medical Treatment Claim

In Estelle,       [HN4] the court held that, although an accidental or inadvertent failure to provide adequate medical care to a prisoner would not rise to the level of a constitutional violation, Estelle, 429 U.S. at 105-06, "deliberate indifference to serious medical needs of prisoners" would constitute an "unnecessary and wanton infliction of pain" and thus would violate the Eighth Amendment's prohibition against cruel and unusual punishment. Id. at 104 (holding that where inmate had been examined and treated by medical personnel on 17 occasions within a three-month period, he failed to state a

cause of action against the treating physician under a 1983), n2 "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. In order to establish that prison officials were deliberately indifferent to an inmate's serious medical needs, an inmate must provide evidence that the officials had actual knowledge of his objectively serious medical condition, [*8] and deliberately denied or delayed adequate treatment for that condition. See Farmer v. Brennan, 511 U.S. 825 (1994), Wilson, 501 U.S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2      [HN5] "In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. 105-06, 50 L. Ed. 2d 251, 97 S. Ct. 285. "The law is clear that simple medical malpractice is insufficient to present a constitutional violation . . . a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need." Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

In the instant case, plaintiff does not allege that he was denied medical treatment; rather, he complains that the medical treatment he received was inadequate, and that this was the result of deliberate indifference on the part of Warden Zettlemoyer and the prison infirmary staff. Specifically, [*9] he argues that "it was very obvious that [his head] needed the stitches but it was also clear that [he] needed X-rays of [his] head to determine if [he] had a concussion or serious internal bleeding of the brain". Complaint P 7.

The decision not to X-ray plaintiff's head was not made by any of the named defendants. To the contrary, it was an independent decision made by the treating physician at Easton Hospital. Although private physicians who contract with state or local government to treat inmates are held to constitutional standards, West v. Atkins, 487 U.S. 42, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988), it is clear from the record that the treating physician in this case, whether acting as an agent of the state or not, simply exercised professional judgment and was not indifferent to plaintiff's needs. Estelle, 429 U.S. at 107 (noting that "the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment" and does not represent cruel and unusual punishment), Brown v. Borough of Chambersburg, 903 F.2d 274 (3d Cir. 1990) (holding that medical personnel are not indifferent[*10] if they exercise professional judgment in response to an inmate's serious needs). Regardless of whether the doctor's decision not to order an X-ray was based on reasonable professional judgment, [HN6] prison administrators and the nursing staff of the prison infirmary

cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician. Durmer, 991 F.2d 64. Since defendants were entitled to rely upon the recommendations of the treating physician, their conduct did not amount to deliberate indifference. n3

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

    n3      [HN7] There is no evidence--nor does plaintiff even allege--that Warden Zettlemoyer participated in the alleged wrongdoing by having actual knowledge of plaintiff's situation and acquiescing in its occurrence or continuation. Accordingly, plaintiff has not stated a a 1983 claim involving supervisory liability against Warden Zettlemoyer. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).


- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*11]

    Plaintiff also alleges that he did not receive adequate follow-up treatment, and that the headaches and dizziness he continued to experience nine months after his fall resulted from his improperly treated head injury. Complaint P 15. However, it is clear that        [HN8] the standard set forth in Estelle "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Given that the undisputed facts show that plaintiff was immediately treated by a physician following his injury, received follow-up care from prison infirmary staff, and to date has not suffered serious injuries as a result of the treatment, the Court concludes that defendants are entitled to summary judgment on plaintiff's medical treatment claim.

    A. Conditions of Confinement Claim

    Plaintiff contends that his due process rights were violated by dangerous conditions of confinement, namely a defectively designed standard prison bunk bed which tilted as he tossed and turned in it, causing him to fall and cut his head. Plaintiff attributes his fall to defendants' gross[*12] negligence and deliberate indifference in failing to have his bunk bed bolted to the floor.

    In Daniels v. Williams, the Supreme Court held that        [HN9] the Due Process Clause is not implicated by a state official's negligent conduct causing unintended loss of or injury to life, liberty or property. Daniels v. Williams, 474 U.S. 327, 328, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986) (holding that inmate who was injured when he tripped over a pillow negligently left on the jail's stairs by a deputy sheriff did not state a constitutional claim). Applying Daniels to the facts of this case, defendants are entitled to summary judgment on plaintiff's negligence claim.

Moreover, plaintiff's claim involving the bed cannot survive on the theory that defendants were deliberately indifferent to his safety in failing to have it bolted to the floor. Plaintiff does not dispute that the bed from which he fell is a standard model prison bunk made in the prison welding shop of angle iron using measurements from other bunks bought from the Bureau of Corrections, Affidavit of Richard A. Zettlemoyer, Exhibit B to Def. Motion, nor does he claim that defendants had advance knowledge of any specific problems[*13] with his bunk bed. n4 He simply asserts that defendants should have known that it posed a danger. Where there is no evidence that prison officials--or even plaintiff himself--were aware of the risk which allegedly materialized, it certainly cannot be said that defendants were deliberately indifferent to plaintiff's safety.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 The Complaint states that plaintiff had requested assignment to a lower bunk before the accident because of a preexisting back injury, not because the upper bunk was unsafe or otherwise put him at risk of falling. Complaint P 2; Fillebrown Deposition at 28-29.


- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

It follows that, plaintiff, as a pre-trial detainee, has not made out a claim that the condition of the bunk bed constituted a punitive condition of confinement as defined in Bell v. Wolfish, 441 U.S. at 537-38 (holding that     [HN10] pre-trial detainees must show that prison conditions are the product of punitive intent on the part of state actors in order to state a due process claim).

III. CONCLUSION

In conclusion, the facts[*14] as set forth in the record before the Court do not raise genuine issues of material fact as to whether plaintiff's due process rights were violated when he allegedly received inadequate medical care or was exposed to dangerous conditions of confinement. Consequently, defendants' Motion for Summary Judgment under Fed. R. Civ. P. 56 will be granted.

ORDER

AND NOW, to wit, this 8th day of August, 1996, upon consideration of Defendants' Motion for Summary Judgment (Document No. 16), plaintiff not having responded to the Motion after having been given an extension of time in which to do so, for the reasons set forth in the attached Memorandum, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED and JUDGMENT IS ENTERED IN FAVOR of defendants, Rick Zettlemoyer, Debbie Comp, Brenda Pitrizzo, and Heather Flurer, and AGAINST the plaintiff, Timothy M. Fillebrown.

BY THE COURT:

JAN E. DUBOIS, J.

NEDRICK J. HARDY SR., # B-50437, Plaintiff, v. Dr. E.P.
AGUINALDO and BARBARA MILLER, Defendants.

NO. 02 C 3614

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

2003 U.S. Dist. LEXIS 9706

June 5, 2003, Decided
June 10, 2003, Docketed

PRIOR HISTORY: Hardy v. Aguinaldo, 2002 U.S. Dist. LEXIS 17022 (N.D. Ill.,
Sept. 10, 2002)

DISPOSITION: [*1] Defendants' motions for summary judgment granted and Hardy's
cross-motions for summary judgment denied.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff prisoner brought a pro se civil rights action
pursuant to 42 U.S.C.S. a 1983 against defendants, a prison doctor and the
administrator of the health care unit, alleging inadequate medical care. The
parties cross-moved for summary judgment.

OVERVIEW:  The prisoner alleged that medical attention for a broken hand was
denied or delayed and that he was denied adequate treatment for a severe stomach
ailment. The court found that the prisoner's claim that the doctor denied the
prisoner necessary medical care was wholly unsupported by the record. The court
noted that the doctor examined the prisoner's hand, ordered an x-ray, prescribed
medication and, after reviewing the results of the x-ray, directed that a splint
be applied. The prisoner could not recover damages for non-receipt of medical
treatment when he did not need or seek medical treatment during the period in
question. As to the prisoner's stomach ailment, the doctor's initial
misdiagnosis of the problem did not reflect such substandard care as to rise to
the level of an Eighth Amendment violation. The administrator asserted that she
did not deny or direct that anyone else deny the prisoner medical treatment and
was completely unaware of his grievances. The court found that the prisoner
provided no evidence of the administrator's direct, personal involvement in any
alleged denial of medical care, as required to sustain a claim against her under
42 U.S.C.S. a 1983.

OUTCOME:  The court granted summary judgment in favor of defendants.

CORE TERMS:  health care, finger, splint, x-ray, prescribed, stomach, pain,
antibiotic, pylori, summary judgment, internal affairs, medical care, swelling,
broken, medical treatment, technician, grievances, inmate, middle finger,

deposition, medical director, medication, sprained, reflux, doctor, deliberate
indifference, opposing, involvement, infection, lawsuit

LexisNexis(R) Headnotes  Hide Headnotes

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
    [HN1] Summary judgment shall be rendered forthwith if the pleadings,
depositions, answers to interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter of law. Fed. R.
Civ. P. 56(c). In determining whether factual issues exist, a court must view
all the evidence and draw all reasonable inferences in the light most favorable
to the non-moving party. However, Rule 56(c) mandates the entry of summary
judgment, after adequate time for discovery and upon motion, against a party who
fails to make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear the burden of
proof at trial. Where the record taken as a whole could not lead a rational
trier of fact to find for the non-moving party, there is no "genuine issue for
trial."

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
Civil Procedure: Summary Judgment: Burdens of Production & Proof
    [HN2] On a motion for summary judgment, unsupported statements in a
brief are not evidence and cannot be given any weight.

Evidence: Witnesses: Personal Knowledge
    [HN3] A witness may not testify to a matter unless evidence is
introduced sufficient to support a finding that the witness has personal
knowledge of the matter. Fed. R. Evid. 602.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Evidence: Procedural Considerations: Burdens of Proof
    [HN4] On a summary judgment motion, the validity of medical records and
entries in the medical records cannot be disputed in the absence of any contrary
evidence.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Prison
Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
    [HN5] A prison health care provider's deliberate indifference to an
inmate's serious medical condition violates the Eighth Amendment. Deliberate
indifference has both an objective and a subjective element: the inmate must
have an objectively serious medical condition, and the health care provider must
be subjectively aware of and consciously disregard a risk to the inmate's health
or safety.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Prison
Officials

Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
     [HN6] Neither simple medical malpractice, nor mere dissatisfaction with
a doctor's prescribed course of treatment, is actionable under 42 U.S.C.S.
a 1983. Erroneous treatment implicates the Constitution only when the health
care provider's conduct reflects a substantial departure from accepted medical
judgment, practice, or standards.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Prison
Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
     [HN7] Mere disagreement over what the best treatment plan might have
been is not actionable under the Constitution. The question of whether a certain
diagnostic technique or form of treatment should be prescribed is a classic
example of a matter for medical judgment that is not actionable under the
Constitution.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Prison
Officials
Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
     [HN8] Deliberate indifference may be inferred based upon erroneous
medical treatment only when the medical professional's decision is such a
substantial departure from accepted professional judgment, practice, or
standards as to demonstrate that the person responsible did not base the
decision on such a judgment.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Prison
Officials
     [HN9] 42 U.S.C.S. a 1983 creates a cause of action based on
personal liability and predicated upon fault; thus, liability does not attach
unless the individual defendant caused or participated in a constitutional
deprivation.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Prison
Officials
     [HN10] The doctrine of respondeat superior (supervisory liability) does
not apply to actions filed under 42 U.S.C.S. a 1983.

COUNSEL: For NEDRICK JEFFREY HARDY, SR aka Nedrick Jeffrey Hardy, plaintiff:
Nedrick Jeffrey Hardy, Stateville - STV, Joliet, IL.

For E P AGUINALDO, Dr., HEALTH CARE ADMINISTRATOR, defendants: IDOC Chief of
Legal Services, Illinois Department of Corrections, Chicago, IL.

For E P AGUINALDO, Dr., defendant: David H. Schroeder, Charysh & Schroeder,
Ltd., Chicago, IL.

JUDGES: MATTHEW F. KENNELLY, United States District Judge.

OPINIONBY: MATTHEW F. KENNELLY

OPINION: MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

   Plaintiff Nedrick Hardy, a state prisoner, has brought this pro se civil
rights action pursuant to 42 U.S.C. a 1983 against Dr. Euaristo Aguinaldo
and Barbara Miller. n1 Hardy claims that the defendants, health care providers
at the Stateville Correctional Center, violated Hardy's constitutional rights by
acting with deliberate indifference to his serious medical needs. More
specifically, Hardy alleges[*2] that medical attention for a broken hand was
denied or delayed and that he was denied adequate treatment for a severe stomach
ailment. This matter is before the Court for consideration of the parties'
cross-motions for summary judgment. For the reasons set forth in this order, the
Court grants summary judgment in favor of the defendants.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

   n1 The claims against various other defendants were previously dismissed.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

      [HN1] Summary judgment "shall be rendered forthwith if the pleadings,
depositions, answers to interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L.
Ed. 2d 265, 106 S. Ct. 2548 (1986). In determining whether factual issues
exist, the Court must view all the evidence and draw all reasonable inferences
in the light most favorable to the non-moving party. Walker v. Northeast
Regional Commuter Railroad Corp., 225 F.3d 895, 897[*3] (7th Cir. 2000).
However, Rule 56(c) "mandates the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element essential to that
party's case, and on which that party will bear the burden of proof at trial."
Celotex, 477 U.S. at 322. "Where the record taken as a whole could not
lead a rational trier of fact to find for the non-moving party, there is no
'genuine issue for trial.'" Chiaramonte v. Fashion Bed Group, Inc., 129
F.3d 391, 393 (7th Cir. 1997).

   Facts

   The defendants have each filed statements of uncontested material facts
pursuant to Local Rule 56.1. Together with their summary judgment motions,
both defendants served on Hardy the required notice under Local Rule 56.2,
advising Hardy what he needed to do to contest the motion, and specifically what
he needed to do to dispute the defendants' statements of uncontested facts.

Despite this, Hardy has not submitted a statement of contested facts; he simply disputes certain facts or elaborates on events in his opposing briefs. [HN2] Unsupported statements in a brief are not evidence[*4] and cannot be given any weight. See, e.g., Johnson v. Spiegel, Inc., 2002 U.S. Dist. LEXIS 15263, No. 02 C 0680, 2002 WL 1880137, at *4 (N.D. Ill. Aug. 15, 2002) (Pallmeyer, J.), citing In the Matter of Morris Paint and Varnish Co., 773 F.2d 130, 134 (7th Cir. 1985).

Nevertheless, because Hardy is proceeding pro se, the Court will consider the factual assertions he makes in his brief, but only to the extent that Hardy could properly testify about the matters asserted. Among other things, [HN3] a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. It should additionally be noted that [HN4] the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence. Moss v. Mormon, 2001 U.S. Dist. LEXIS 19258, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D. Ill. Nov. 26, 2001) (Andersen, J.)

The Court therefore finds that the following facts, gathered from the parties' submissions, are undisputed for purposes of this motion. Hardy has been confined at the Stateville Correctional Center at all times relevant to this lawsuit. (Complaint, [*5] p. 2, Part I, "Plaintiff(s)" section.) Defendant Barbara Miller is the administrator of Stateville's health care unit. (Id., Part II, "Defendant(s)" section.) Defendant Euaristo Aguinaldo is a staff physician at Stateville. (Id.)

On May 23, 2001, Hardy injured the middle finger of his left hand while attempting to pry open a property box. (Complaint, p. 6.) Hardy showed his swollen hand to a correctional officer. (Id.) The officer surmised, based on the amount of swelling, that Hardy's hand was broken. (Id.) The officer called a sergeant, who promised to send someone from the health care unit to look at Hardy's hand. (Id.) But no one from the health care unit visited Hardy that day or night. (Id.)

The next morning, Hardy showed his hand to a medical technician who was making his daily rounds. (Id.) The medical technician told Hardy he would be x-rayed that morning, but Hardy was not called to the health care unit until the early afternoon. (Id.) Hardy saw Dr. Aguinaldo at around 12:50 p.m. (Id., Defendant Aguinaldo's Exhibit D, Affidavit of Euaristo Aguinaldo, P 4.)

When Dr. Aguinaldo examined Hardy, he noted that there was slight swelling of [*6] the finger. (Id.). Dr. Aguinaldo ordered an x-ray, prescribed two Tylenols every four to six hours for ten days, and had Hardy wait for the results of the x-ray. (Id.).

The x-ray results reflected "an old chip fracture" at the base of the proximal phalanx, left middle finger. (Id., P 5; see also Defendant Aguinaldo's Exhibit C, Medical Progress Notes of May 23, 2001.) Dr. Aguinaldo diagnosed a

sprained finger and ordered that a nurse or CMT, "whoever was first available," apply a finger splint to Hardy's middle finger. (Aguinaldo Affidavit, P 5.) The last instruction Dr. Aguinaldo gave to the support staff in the health care unit was to apply a splint to Hardy's finger before he was sent back to his cellhouse. (Id., P 6.)

No one in the health care unit applied a splint or cast. (Defendant Aguinaldo's Exhibit E, Deposition of Nedrick Hardy, at p. 16.) According to Hardy, several different medical technicians and correctional officers told him that he had to see Internal Affairs before he could get a splint for his sprained finger. (Id., pp. 16, 19-20, 32.)

Dr. Aguinaldo apprised the Internal Affairs department of Hardy's injury, as required when an inmate[*7] is injured under unusual or suspicious circumstances. (Aguinaldo Affidavit, P 6.) However, Dr. Aguinaldo denies that he stopped or delayed treatment as a result of any internal affairs investigation. (Id.)

Later the same day, Hardy complained to a certified medical technician that he had not received any Tylenol or splint. (Id., P 7; Medical Progress Notes of May 24, 2001; Hardy Deposition, p. 17.) After checking Hardy's medical records in the health care unit, the CMT splinted the left middle finger, applied warm compresses, and provided him with Tylenol. (Id., pp. 17-18, 102.) No one from Internal Affairs ever contacted Hardy. (Id., p. 20.)

On June 14, 2001, Hardy returned to the health care unit, complaining of continued pain and swelling. (Aguinaldo Affidavit, P 8; Medical Progress Notes of June 14, 2001.) The tape had come off by that time, so Hardy was no longer wearing the splint. (Hardy deposition, p. 25.) Dr. Aguinaldo noted that Hardy was alert and in no distress; he detected no swelling. (Aguinaldo Affidavit, P 8.) Though Dr. Aguinaldo observed no swelling or tenderness, Hardy expressed pain on dorsiflexion (that is, when he bent his finger back). (Id[*8] , Medical Progress Notes of June 14, 2001.) Dr. Aguinaldo again prescribed Tylenol and, because Hardy did not have a splint on his left hand when he returned to the health care unit, his finger was again splinted. (Id.) This time, a "splint cast" was applied. (Hardy Deposition, p. 26.) Dr. Aguinaldo tried to explain to Hardy that he needed only a splint and not a cast. (Id., pp. 26-27, 103.) He directed Hardy to return to the health care unit as needed and instructed him not to play basketball for eight to ten weeks (Hardy had apparently re-injured his finger playing basketball). (Aguinaldo Affidavit, P 8; see also Medical Progress Notes of June 14, 2001.)

On June 26, 2001, Hardy went to the health care unit for treatment of back pain and acid reflux. (Aguinaldo Affidavit, P 9.) Hardy made no mention of any problems with his finger. (Id.) He removed the second splint on his own on July 4, 2001 because his finger felt better. (Hardy Deposition, pp. 36-37.) Hardy made no more complaints about his finger until September, when he began experiencing pain and swelling once again. (Hardy Deposition, pp. 30-31, 37.) Hardy believes that his finger has healed properly. (Id. [*9] , p. 43.)

When Hardy complained of a burning sensation in his stomach on June 26, 2001, Dr. Aguinaldo noted that he had a history of acid reflux, which had been diagnosed as such prior to Hardy's transfer to Stateville. (Aguinaldo Affidavit, P 9; Hardy Deposition, pp. 46-47.) Dr. Aguinaldo examined Hardy and detected "normal bowel sounds". (Aguinaldo Affidavit, P 9.) He nevertheless ordered an upper gastrointestinal (GI) x-ray to rule out gastritis and prescribed Tagamet, a medication commonly used in treatment of ulcers and gastroesophageal reflux. (Id.; Physicians' Desk Reference, 57th Edition (2003), at p. 1646.) Hardy had specifically told the doctor that prior to his transfer to Stateville, Tagamet had worked well for him. (Complaint, p. 11.) (Id.)

The Tagamet continued to help alleviate Hardy's symptoms during the time period in question. (Hardy Deposition, pp. 50-52.) For unknown reasons, Hardy did not begin receiving Tagamet until about two weeks after Dr. Aguinaldo had prescribed it. (Id., p. 61.) But Hardy faults the medical technicians for the omission and admits that he never contacted Dr. Aguinaldo about the problem. (Id., pp. 61-63.)

The upper GI[*10] x-ray was performed on July 19, 2001. (Aguinaldo Affidavit, P 10.) The results were negative for gastritis. (Id.)

On July 30, 2001, Hardy requested that the Tagamet prescription be renewed because he continued to suffer heartburn. (Id., P 11.) A Dr. Ngu (another staff physician at Stateville not named as a defendant in this lawsuit) renewed Hardy's prescription for Tagamet and also prescribed Zantac, another medication used to control gastric problems. (Id.; Hardy Deposition, p. 56.)

On September 5, 2001, Hardy complained that he was experiencing pain in his left middle finger when he made a fist. (Aguinaldo Affidavit, P 12.) Hardy was "alert and in no distress," and Dr. Aguinaldo noted no swelling, tenderness or pain. (Id.) Although Dr. Aguinaldo's findings were that Hardy had a "clinical normal left middle finger," he requested another x-ray of the finger. (Id.) The x-ray report revealed no new injury, only the old fracture. (Id., P 13.) On that visit, Hardy made no complaints of heartburn or stomach pain. (Id.)

On September 9, 2001, Hardy's psychiatrist, Dr. Stampey, ordered a blood test. (Hardy Deposition, p. 69.) After reviewing the results of the[*11] blood test, Stampey informed Hardy that he had tested positive for helicobacter pylori. (Id., p. 70; see also Exhibit C, Genesis Clinical Laboratory Report of September 7, 2001.) According to the complaint at p. 12, H. pylori is a bacterial infection that affects the stomach lining. Dr. Stampey promised to report the test results to Dr. Aguinaldo. (Hardy Deposition, p. 70.)

On October 9, 2001, Hardy went to the health care unit complaining of stomach cramps. (Aguinaldo Affidavit, P 14.) Upon reviewing Hardy's medical chart, Dr. Aguinaldo discovered that Stampey had ordered the "routine" blood test and that Hardy had tested positive for H. pylori. (Id.) Because the lab results had been placed in Hardy's medical charts rather than directed to Dr. Aguinaldo, the doctor was unaware of the lab test prior to Hardy's next visit to the health care unit. (Id.) On reviewing Hardy's charts and reading the lab report, Dr.

Aguinaldo prescribed Amoxicillin and Flagyl, the "recommended regime [sic] of antibiotics" for H. pylori. (Id., P 15.) The proper course and treatment for H. pylori is a regimen of daily antibiotics for a two-week period. (Id., P[*12] 24.) Dr. Aguinaldo also prescribed Pepto Bismol as needed, along with Tagamet twice a day. (Id., P 15.)

According to Dr. Aguinaldo, it is unnecessary to run follow-up blood tests in connection with the discovery of the bacterial infection H. pylori. (Id., P 25.) If a patient has no further complaints after the course of medication has been completed, it is safe to assume that the antibiotic treatment was effective. (Id.) Dr. Aguinaldo specifically directed Hardy to schedule an appointment after two weeks of taking antibiotics; Hardy did so and on his return visit to the health care unit on October 25, 2001, he had no further complaints of stomach cramping or pain. (Id., 26.) As a result, Dr. Aguinaldo adjudged that no further treatment was necessary at that time. (Id.) Dr. Aguinaldo did not see Hardy again until February 2002. (Id., P 17.)

On November 8, 2001, Hardy went to the health care unit claiming that he had injured another finger while playing basketball. (Id., P 18.) Dr. Ngu attended to the injury. (Id.) Hardy made no complaints of stomach pain or cramps at that time. (Id.)

On December 13, 2001, Dr. Ngu examined Hardy again, this[*13] time with regard to the his report that he had been poked in the eye and was having blurred vision. (Id., P 19.) Dr. Ngu prescribed Tylenol and referred Hardy to the optometry clinic. (Id.) Hardy made no complaints of stomach pain or cramps at that visit. (Id.)

On December 14, 2001, Hardy requested to see a doctor because he had blood in his stool. (Id., P 20.) Dr. Ngu prescribed a course of the antibiotics Amoxicillin and Biaxin (antibiotics) for two weeks. (Id.) He also ordered a lower GI x-ray to rule out gastrointestinal bleeding. (Id.) Hardy refused the x-ray. (Id., P 22; Hardy Deposition, pp. 84-85.) Hardy's medical records reflect no further complaints of stomach pain, cramping or other intestinal ailments after December 15, 2001. (Aguinaldo Affidavit, P 23.) Hardy admits that the H. pylori "cleared up" after the second round of medication. (Hardy Deposition, p. 84.) He occasionally still suffers from acid reflux, but he takes Tagamet when he experiences stomach problems. (Id., p. 85.)

Dr. Aguinaldo had occasion to see Hardy again on February 12, 2002, when Hardy complained that he had pain and swelling in his left hand as a result of a [*14] fight he had been in five days earlier. (Id., P 17.) Dr. Aguinaldo ordered an x-ray, which revealed no broken bones. (Id.)

Hardy filed a number of grievances complaining about the quality of his medical care during the time period in question. (See exhibits to complaint and to Hardy's brief opposing Miller's first motion for summary judgment.) None of Hardy's grievances mentioned the defendant Miller. (Id.) Miller states that she has no personal knowledge of Hardy's medical complaints underlying this action, nor any involvement in his medical care. (Affidavit of Barbara Miller, attached

to her Statement of Uncontested Facts, P 2.) Medical care is provided by on-site health care staff and outside specialists. (Id.) Miller is merely an administrator; she has no medical license and no personal involvement in providing individual inmate medical treatment. (Id, at PP 1 and 2.) Medical care is overseen by Stateville's medical director, a licensed physician. (Id, P2.) Had Miller received any complaints from Hardy about inadequate medical treatment, she says, she would have referred the matter to the medical director and/or the attending physician. (Id. at[*15] P 3.) Miller says that she never personally handled nor was she aware that Hardy had filed grievances concerning his medical care. (Id.) She states that she has never denied or directed anyone else to deny Hardy medical treatment. (Id. at P 4.)

Discussion

1. Claims against Dr. Aguinaldo

   a. Sprained finger

It is well settled that       [HN5] a prison health care provider's deliberate indifference to an inmate's serious medical condition violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994); Estelle v. Gamble, 429 U.S. 97, 103-04, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); Sherrod v. Lingle, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the health care provider must be subjectively aware of and consciously disregard a risk to the inmate's health or safety. Farmer, 511 U.S. at 837; Sherrod, 223 F.3d at 610.

The record reveals that Hardy suffered only a sprained finger, not a broken hand or finger as[*16] he alleged in his complaint. Hardy continues to maintain that he suffered a broken hand; he asserts, "Plaintiff Hardy was told by the x-ray tech personally that his hand was broken. . . ." But the medical progress notes for May 23, 2001, indicate "Sprain" and the x-ray report dated May 29, 2001, indicates "Old chip fx base of prox. phalanx middle finger" (emphasis added). The Medical Progress Notes of June 11, 2001, likewise refer to an "old" chip fracture. See also X-ray reports of September 18, 2001 ("No new pathology; old fx base") & November 13, 2001 ("Swelling; no fracture seen"). There is no competent evidence to support Hardy's assertion that his hand was broken, only hearsay from a medical technician. The record does not support a finding that Hardy had a broken hand or finger.

Assuming that Hardy's sprained finger amounted to a "serious" medical need, Dr. Aguinaldo did not act with deliberate indifference. There is no dispute that he examined Hardy's hand, ordered an x-ray, prescribed Tylenol and, after reviewing the results of the x-ray, directed that a splint be applied. It is unfortunate that a splint was not applied until that evening or the next day, when Hardy[*17] alerted a medical technician that he still needed a splint. But that oversight cannot be attributed to Dr. Aguinaldo, who specifically directed his staff to apply a splint; moreover, even if Dr. Aguinaldo was responsible for

the delay, there is no evidence from which a reasonable jury could find that he had a culpable state of mind.

Hardy's claim that he was "denied" care between May 23, 2001, and June 14, 2001, mischaracterizes the sequence of events. After a one-day delay, a splint was applied. Hardy apprised a medical technician of the problem, and the matter was promptly rectified. Hardy cannot dispute the medical records--and his own deposition testimony--that his finger was splinted on May 24, 2001. Hardy seems to confuse a cast and a splint; he conceded in his deposition that a CMT applied a tongue depressor and wrapped his finger in gauze on that date (Hardy Deposition, p. 17), but he still maintains that he did not receive a splint until June 14, 2001. The tongue depressor and wrap were, in fact, a splint even though the dressing may have seemed makeshift to Hardy.

In any event, Hardy admits that he has no reason to believe that Dr. Aguinaldo was at fault for any lack of[*18] treatment from May 23, 2001, to June 14, 2001. (See Hardy Deposition, pp. 32, 36.) Rather, Hardy believes that someone in Internal Affairs directed that treatment be withheld. (Id.) However, he provides no evidence to support his belief. Dr. Aguinaldo admits that he reported the suspicious injury to Internal Affairs, as required by prison regulations, but he emphatically denies that an internal affairs investigation did or would prevent an inmate from receiving needed medical treatment. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 In allowing Hardy to proceed on his claims, the Court noted, "After conducting discovery, the plaintiff may wish to file an amended complaint naming the specific internal affairs investigators who purportedly barred him access to the medical unit." See Minute Order of June 3, 2002. But Hardy has never identified any such person; indeed, he concedes in his brief opposing summary judgment that no one from Internal Affairs ever contacted him.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The evidence regarding Hardy's follow-up care further belies any inference [*19]that Dr. Aguinaldo was deliberately indifferent to his medical needs. On June 14, 2001, Hardy returned to the health care unit after he re-injured his finger playing basketball. Dr. Aguinaldo again prescribed Tylenol and, because Hardy no longer had a splint on his left hand when he returned to the health

care unit, another splint (or "splint cast") was applied. Dr. Aguinaldo directed Hardy to return to the health care unit as needed. Hardy's finger felt sufficiently recovered that he removed the splint on his own on or about July 4, 2001. (Hardy deposition, p. 36.) Dr. Aguinaldo did not have occasion to see Hardy again about the injured finger until September 2001, at which time he made a clinical finding that Hardy's finger was "normal." Dr. Aguinaldo nevertheless ordered a repeat x-ray, which also proved negative. Hardy believes that ultimately, his finger fully healed. (Id., p. 43.)

There is no evidence that Hardy ever requested or was denied medical attention from Aguinaldo or anyone else between visits to the health care unit. Nor was Hardy constitutionally entitled to see an orthopedic specialist for examination of a sprained finger, a simple injury adequately treated by[*20] a general practitioner under most circumstances. Under these circumstances, the Court must defer to the judgment of Hardy's treating physician that referral to an orthopedic specialist was "not indicated." (See unmarked exhibit to Hardy's brief opposing summary judgment, counselor's response, dated November 16, 2001; see also Hardy Deposition, at pp. 34-35: "I just thought, I don't know; I probably didn't hear [Aguinaldo] right, I'm not sure [about being referred to ortho"].) Hardy received constitutionally adequate medical care for his injured finger. He cannot recover damages for non-receipt of medical treatment when he did not need or seek medical treatment during the period in question.

b. Stomach ailment

The Court will assume for purposes of the parties' motions that Hardy's helicobacter pylori infection constituted a "serious" medical condition, as he contends it caused him sharp pain, burning and cramps. See Sherrod, 223 F.3d at 610 (inflamed appendix was objectively serious); Zentmyer v. Kendall County, 220 F.3d 805, 810 (7th Cir. 2000) (an ear infection, though a "common malady," could be deemed objectively serious[*21] where it "inflicted prolonged suffering" and required extensive treatment); Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (a condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain").

Dr. Aguinaldo is nevertheless entitled to summary judgment because there is no evidence he acted with deliberate indifference to Hardy's medical problem. When Dr. Aguinaldo first saw Hardy in relation to his complaints of stomach problems, the doctor noted that Hardy had a history of heartburn and had previously been diagnosed as suffering from chronic acid reflux. Dr. Aguinaldo examined Hardy and detected "normal bowel sounds," but he ordered an upper GI x-ray to rule out gastritis. He also prescribed Tagamet, a medication Hardy specifically requested because it had always helped his condition. (Hardy deposition, pp. 50-52.) Although the complaint mischaracterizes Dr. Aguinaldo's actions as amounting to withholding of treatment, Hardy's medical records refute any such inference. Hardy concedes that, to his knowledge, Dr. Aguinaldo was unaware of the two-week lapse between his ordering[*22] Tagamet and the prescription's being filled.

Dr. Aguinaldo's initial misdiagnosis of the problem did not reflect such substandard care as to rise to the level of an Eighth Amendment violation.

[HN6] Neither simple medical malpractice, Steele v. Choi, 82 F.3d 175, 178-79 (7th Cir. 1996), nor mere dissatisfaction with a doctor's prescribed course of treatment, Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996), is actionable under 42 U.S.C. a 1983. Erroneous treatment implicates the Constitution only when the health care provider's conduct reflects a substantial departure from accepted medical judgment, practice, or standards. Sherrod, 223 F.3d at 611; Vance v. Peters, 97 F.3d 987,

992 (7th Cir. 1996), Given Hardy's history of acid reflux and his specific request for Tagamet, Dr. Aguinaldo's course of treatment did not reflect reckless disregard, especially when he ordered an upper GI x-ray to help determine the source of the problem.

The fact that at least one other physician, Dr. Ngu, took the same approach as Dr. Aguinaldo, renewing the Tagamet prescription, further weakens any claim that[*23] Dr. Aguinaldo's response to Hardy's stomach complaints was so inadequate as to reflect "an absence of professional judgment." See Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998), [HN7] Mere disagreement over what the best treatment plan might have been is not actionable under the Constitution. Id. It is unfortunate that Hardy continued to suffer his stomach ailment until Dr. Stampey ordered an additional test, however, the question of whether a certain diagnostic technique or form of treatment should be prescribed "is a classic example of a matter for medical judgment" that is not actionable under the Constitution. Estelle v. Gamble, 429 U.S. 97, 107, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976),          [HN8] Deliberate indifference may be inferred based upon erroneous medical treatment only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment. Estate of Cole v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).

There is no dispute that Dr. Aguinaldo prescribed the standard[*24] antibiotic regimen once he learned that Hardy had tested positive for H. pylori, Hardy concedes that the condition cleared up after a second round of antibiotics was prescribed. Dr. Aguinaldo also prescribed Pepto Bismol and Tagamet to alleviate Hardy's symptoms until the antibiotics took effect.

There is no basis in the record to question Dr. Aguinaldo's assertion that it is unnecessary to run follow-up blood tests in connection with the discovery of the bacterial infection H. pylori. According to Dr. Aguinaldo, if a patient has no further complaints after the course of medication has been completed, it is safe to assume that the antibiotic treatment was effective. Hardy was no stranger to the health care unit, as evidenced by his medical records reflecting appointments for his myriad health concerns, he was aware that he could contact the medical staff had he experienced any problems with the antibiotics. On October 25, 2001, when Hardy returned to the health care unit for a follow-up appointment two weeks after beginning antibiotics, he registered no further complaints of stomach cramping or pain.

In sum, Hardy's claim that Dr. Aguinaldo denied Hardy necessary medical[*25] care is wholly unsupported by the record. Even viewing the evidence in the light most favorable to Hardy, no reasonable person could infer that Dr. Aguinaldo acted with deliberate indifference.

2. Claims against Barbara Miller

Hardy has provided no evidence of defendant Barbara Miller's direct, personal

involvement in any alleged denial of medical care, as required to sustain a claim against her under a 1983. See, e.g., Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Hardy has also failed to provide evidence that the alleged violations of his constitutional rights occurred at Miller's direction or with her knowledge and consent. Id. "Section 1983

   [HN9] creates a cause of action based on personal liability and predicated upon fault, thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Washington, 97 F.3d 987, 991 (7th Cir. 1996)(citations omitted).

   Hardy conceded in his deposition that he sued Miller based solely on her position as health care unit administrator. But the mere fact that Miller is the administrator of the health care unit at Stateville[*26] is insufficient to provide a basis for liability in this case.      [HN10] The doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. a 1983. See Pacelli v. DeVito, 972 F.2d 871, 877 (7th Cir. 1992). As Miller explains in her affidavit, she had no personal knowledge of the problems underlying this lawsuit, nor any involvement in his medical care. Miller asserts that she did not deny or direct that anyone else deny Hardy medical treatment, and was completely unaware of his grievances. Because Miller does not hold a medical license, she does not provide direct inmate care; her position is administrative in nature. Medical care at Stateville is supervised by the medical director, a licensed physician. Had Miller become aware of any complaints by Hardy concerning inadequate medical care, she would have referred the matter to the medical director and/or the attending physician for appropriate action.

   Hardy argues that Miller is either lying about her lack of personal involvement "or else she didn't do her job." But Hardy has provided no evidence supporting his assertion that Miller "has a say in who the[*27] Doctor see or doesn't see," or that she was otherwise responsible for any delays or denials of needed care.

   Hardy has submitted copies of two memoranda written by the facility's medical director discussing unrelated grievances Hardy filed regarding the quality of his medical care. (See Unmarked Exhibits to Hardy's "Opposing Motion for Defendant Barbara Miller's Summary Judgment Motion," Memoranda dated March 20, 2002, and April 24, 2002.) The memoranda reflect that copies were mailed to Miller and six other correctional officers and health care providers. However, those memoranda were sent a year after the events giving rise to this lawsuit and admittedly concern "another complaint that Plaintiff Hardy had." (Hardy's brief opposing Miller's motion for summary judgment at p. 2.) The memoranda are insufficient to support an inference that Miller was involved in the medical issues underlying this action or aware of Hardy's earlier grievances, to the contrary, they substantiate her assertion that the medical director dealt with inmate grievances. Hardy insists that dealing with grievances is part of Miller's job, but his assertions are neither based on personal knowledge nor supported[*28] by any evidence. In sum, Hardy has provided no basis to discount Miller's sworn statements and, more generally, has failed to provide evidence

from which a reasonable jury could find that Miller was personally involved in the alleged circumstances giving rise to this lawsuit.

Conclusion

For the reasons stated above, the Court grants defendants' motions for summary judgment (docket nos. 43 and 46) and denies Hardy's cross-motions for summary judgment (docket nos. 49 and 51). Defendant Miller's motion to strike Hardy's surreply (docket # 53) is denied as moot. The Clerk is directed to enter judgment in favor of the defendants. The parties are to bear their own costs.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should set forth the issues the plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C); Hyche v. Christensen, 170 F.3d 769, 771 (7th Cir. 1999). If the plaintiff does choose to appeal, he will be liable for the $ 105 appellate filing fee irrespective of the[*29] outcome of the appeal. Evans v. Illinois Dept. of Corrections, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may be assessed a "strike" under 28 U.S.C. a 1915(g). The plaintiff is cautioned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. Id.

MATTHEW F. KENNELLY

United States District Judge

Date: June 5, 2003