**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

SAMUEL BOWENS                           3:03CV400(CFD)

V.

MARK STRANGE, ET AL                     OCTOBER 14, 2004


**AFFIDAVIT OF DR. FRED SERAFINI**

The undersigned, having been duly sworn, hereby deposes and says:

1. I am over the age of 18 and understand and believe in the obligation of an oath.

2. I am a retired medical doctor who previously provided medical care to inmates as a contractor first with the Department of Correction and then as a contractor with the University of Connecticut.

3. Since the mid-90s, the University of Connecticut Health Center "UCHC" has contracted with the Department of Correction to provide healthcare for persons within the custody of the Commissioner of Correction.

4. UCHC created "Correctional Managed Health Care" as the entity responsible for providing direct care to inmates. Correctional Managed Health Care has established a "Utilization Review Committee".

5. In order for an inmate to receive a consultation with a medical care provider outside the facility in which he is housed, or to receive certain procedures such as surgery, the Utilization Review Committee ("URC") must approve care proposed by

1

an on-site physician. An ophthalmology consult for an inmate requires approval by the URC, as would any eye surgery.

6. If URC denies treatment, a doctor cannot override URC's decision. Custodial staff, such as Wardens and Correctional Counselors, have no input into the URC decision-making process as they are not qualified medical professionals. URC is a committee made up solely of licensed healthcare practitioners. Dr. Serafini was not on the Utilization Review Committee during the plaintiff's last period of incarceration.

7. During the years 2000 and 2001 I provided medical care to inmates at the Willard-Cybulski facility among others. I did not provide medical care to the plaintiff in this matter, Samuel Bowens, when he was housed at Osborn Correctional Institution.

8. Dr. Pillai was the doctor following the plaintiff's general care while he was incarcerated at Osborn.

9. Osborn has a more extensive medical unit than Willard.

10. Gates is a low security level facility where inmates are often transferred in the period leading up to their discharge from prison.

11. The plaintiff was at Willard only a short period of time, and during that time, I made several efforts to help the plaintiff, making URC requests on a repeated basis.

12. I reviewed the plaintiff's chart on May 22, 2001, signing off on the URC response on that date. I noted in the chart that he had reviewed the URC orders on May 22, 2001.

13. This is the first time that I had any contact with the plaintiff or his case. Eight days later, on June 1, 2001, I examined the plaintiff. On this date, I reviewed the

plaintiff's medication compliance with him. Also on this date, I noted that the "Plan" for the plaintiff was to follow up with ophthalmology and I reviewed the ophthalmology note.

14.   At this time, I estimated the plaintiff's vision to be almost completely gone in his left eye in notes made on the left side of the chart. I also noted at the time that the glaucoma was several years old and that there were no changes since April of 2001.

15.   At the time the plaintiff was due for his ophthalmology follow-up as per the ophthalmologist, I re-submitted the URC request previously submitted by Dr. Suchecki for the ophthalmology clinic appointment. I faxed to URC an optometry report indicating the plaintiff was reporting his compliance with the medication regime. This request was again denied.

16.   Shortly after reviewing the plaintiff's chart on May 22, 2001, I submitted a request for a non-formulary medication for the plaintiff's eyes. This medication had been recommended by the ophthalmologist, so I made the request. A non-formulary drug is one not typically given unless there is an unusual reason. In this case, I went to the trouble of requesting a non-formulary medicine to give the plaintiff the best level of care.

                                                                     /s/_____
                                                                 Dr. Ferdinand F. Serafini

Subscribed and sworn to before me this 14th day of October, 2004.

                                                                     /s/_____
                                                                 Lynn D. Wittenbrink
                                                                 Commissioner of the Superior Court/